Nash, J.
On the 3d of September, 1878, the defendant in error, David H.-Wilder, who was a resident of .Corry, Pennsylvania, was brought to Cincinnati by virtue of a. warrant issued by the governor of Pennsylvania upon the requisition of the governor of Ohio. Before that time a complaint had been filed by the plaintiffs in error, Compton, Ault & Co., with a magistrate of Hamilton county, charging said Wilder with the crime of having obtained their promissory note by false pretenses. It was in this prosecution that the requisition of the governor of Ohio was issued at the request of Compton, Ault & Co. On said 34 day of September, Wilder wras taken before the magistrate and gave bond for his appearance at 10 o’clock A. M., Sept. 4th, 1878. He did so appear, waived an examination, and entered into a recognizance to appear before the court of common pleas of Hamilton county, at the first daj' of the November term, 1878. Upon said bond being given, he was released from custody at about ll£ o’clock A. M. September *132 4th. ;The -next train for Cony, Pennsylvania, the home of Wilder, did not leave until the evening of Sept. 4th.
Upon said 4th day of September, Compton, Ault & Co. commenced a civil action against Wilder in the superior court of Cincinnati, grounded upon an alleged indebtedness arising out of the note mentioned in the criminal prosecution as having been obtained by false pretenses, and had ■ a summons and an order of arrest issued therein. Said summons and order of arrest were served in person upon Wilder during the afternoon-of September 4th.
September 5th, Wilder, by motion,' asked the court to set aside the service of summons and order of arrest and discharge him from custody. This motion was granted by the súperior court and exceptions were taken by Compton, • Ault & Co, The district court .of Hamilton county affirmed the judgment of the superior court. Now, the plaintiffs ask the reversal of the judgments of the superior'court of Cincinnati and of the district court of Hamilton county.
Wilder had been surrendered by the state of Pennsylvania, to be prosecuted by the state of Ohio and in her name for -an alleged crime. It was for this purpose alone that the state of1 Ohio asked his extradition. It was for this purpose alone that the state of Pennsylvania handed one of her citizens Over to the officers of Ohio.
This-proceeding took place -by virtue of that portion of section two, article four, of the constitution* of the United States, which provides -that a person charged in any state with treason,’felony or other crime, who shall -flee from justice and be found in another state shall, on demand of the executivé authority of the- state from which- he fled, be delivered up, to be removed to . the state having jurisdiction, and by-virtue of the laws of the’United States, enacted tb make this provision of- the constitution effective.
In this case this machinery'was set in .motion by Compton, ■Ault & Co. by their application to the governor- of Ohio. ■Good faith upon the part of these applicants and good faith upon -the part of Ohio to the surrendering state, demanded ¡that Wilder, having been by force brought into -Ohio, for a *133 Bpecific purpose., should not be deprived of any rights, except such as he had forfeited by the commission of the alleged crime. He cannot be held to have forfeited any right before conviction. It is claimed that he was indebted to Compton, Ault & Co. If he was, it was his right to be sued in the jurisdiction in which he was domiciled unless he voluntarily came into the jurisdiction of Ohio.
It was bad faith in Compton, Ault & Co. to commence a civil action and attempt to serve a summons and an order of. arrest therein upon Wilder before conviction and before he had an opportunity to return to his home. It would become bad faith in this state if. her courts should make such service effective. It was a duty made incumbent upon the governor of Pennsylvania by the constitution of the United States, to surrender Wilder, upon proper application from the governor of Ohio. But as reflecting upon this question of good faith it is not irrelevant to look at the legislative enactments of this state upon this, subject.
March 25, 1870, the general assembly adopted a resolution relative to the surrender of persons charged with treason, felony or other crimes (67 Ohio Laws, 171). In this resolution it was suggested that, in the opinion of the general assembly, the governor of Ohio should not make a requisition for an alleged fugitive from justice until clearly satisfied that the requisition is sought in good faith for the pumishment of crime and not for the purpose of collecting any debt or pecuniary mulct, or for the purpose of removing the alleged fugitive to a foreign' jurisdiction with a view there to serve him with civil process. It also suggested that the governor should be in like manner satisfied, before issuing, his warrant upon a requisition made upon him by any other state for an alleged fugitive.'
The rule thus suggested has governed the executive department of the state since 1870. What was formerly a rule of the executive department, suggested by the general assembly, became a law controlling the action of the governor on the 1st of January, 1880. [Rev. St., § 95.]
By the action of the executive and legislative branches *134 of her government, Ohio has indicated to the other states her purpose to .confine the use of the power to extradite persons charged with crime,' to its sole and proper object. To secure a service of summons, in a civil action like the one we are considering, is not one of the objects intended to be accomplished by this grant of power. In a country like ours this power is useful and indispensable. It was intended, however, to subserve great public interests. When otherwise used it becomes an evil.
The temptation to make it subservient to private interests is great. This weapon, intended alone to secure the punishment of crime, is frequently resorted to, to enforce the collection of private debts or to remove a citizen from his home' into a foreign jurisdiction that he may there be served in a civil action.
This growing evil .has been seen and appreciated by the chief executives of many states, and to guard against It rules and regulations are being adopted,' which may make the extradition of an alleged fugitive, in a proper case, extremely difficult. It has been recognized by both the executive and legislative branches of our government, as is shown by their former action.
The judicial should be as swift in putting the seal of condemnation upon this abuse as have been the other branches of the government. The certain remedy to prevent its growth is, to deprive all persons who participate in the misuse of the power to extradite persons, alleged to be fugitives from justice, of the fruits resulting from such participation.
' We approve of the conclusions reached by the superior, court of Cincinnati and the district court of Hamilton county and affirm their judgments.
Judgment accordingly,